IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RODJAUN NEAL-WILLIAMS,

    Plaintiff,

    v.

OFFICER DARAMY, *et al*.,

    Defendants.

Civil Action No.:  SAG-23-2166

**MEMORANDUM**

Plaintiff Rodjaun Neal-Williams, who is currently incarcerated at Patuxent Institution, brings this civil rights action against Sergeant Moyosore Ojo and Officers Beige Daramy, Richard E. Ndoh, Junior Powell, and Richard Austin.[1]  ECF No. 1.  On January 17, 2024, Defendants moved to dismiss the Complaint.  ECF No. 8.  Plaintiff opposed the motion.  ECF No. 10.  Plaintiff also filed a Motion for Court to Enter Judgment in Plaintiff's Favor (ECF No. 12), which Defendants opposed (ECF No. 13), and a Motion to Appoint Counsel (ECF No. 11). This matter is now ripe and ready for review.  For the reasons discussed below, Defendants' motion will be treated as a motion for summary judgment and will be denied without prejudice. Plaintiff's two motions will also be denied.

**I.    Complaint Allegations**

Plaintiff alleges that on April 6, 2023, while incarcerated at Montgomery County Correctional Facility ("MCCF"), his cell door was opened for lunch distribution. ECF No. 1 at 4. He states that he exited his cell to get his food and upon his return he could not enter because his cellmate was in an argument with another inmate.  *Id.*  Officer Austin called for assistance, stating

---

[1] The Clerk shall be directed to amend the docket to reflect the full and correct names of Defendants.

there was a physical fight, which Plaintiff contends was false. *Id.* Plaintiff and his cellmate locked in but officers ordered Plaintiff to pack his belongings and cuff up so they could escort him to segregation. *Id.* at 4-5. Upon arrival, Plaintiff immediately informed Officers Daramy, Powell, and Ndoh that he had not been able to eat lunch because of the incident and they told Plaintiff he would be brought a lunch tray. *Id.* at 5. Hours passed and none of the officers brought Plaintiff lunch. *Id.* Plaintiff informed Sgt. Ojo that he had not been provided lunch; he stated that he would look into the issue. *Id.* at 5, 6. Plaintiff continued to request lunch when Officers Daramy, Powell, and Ndoh conducted rounds every 15 to 30 minutes; the Officers repeatedly said it was coming or that they needed to call for it. *Id.* at 6. Sgt. Ojo and Officer Ndoh and Powell left at the end of their shift around 3:00 p.m. without addressing the problem. *Id.* Officer Daramy was working another shift but still failed to get Plaintiff lunch. *See id.*

When the new shift arrived, Plaintiff informed Sgt. Parker about the issue as well but she replied that "it was last shift's problem not hers." ECF No. 1 at 6. Plaintiff brought the issue to Officer Daramy again who asserted that Plaintiff was lying and had eaten lunch in his cell before being transferred to segregation. *Id.* at 6-7. Plaintiff states that this incident caused him distress and he was lightheaded from not eating. *Id.* at 7. Plaintiff requested to see a mental health professional but Sgt. Parker and Officer Daramy refused because they were conducting a window and wall check. *Id.* He also requested medical assistance because he was so hungry and dizzy. *Id.* During medication distribution, Plaintiff reported the issue to Nurse Gladys. *Id.* Feeling that nothing was being done, Plaintiff decided to attempt suicide in front of the nurse and was sent to Holy Cross Hospital. *Id.* at 7-8.

When Plaintiff gained consciousness at the hospital, he states that his body was paralyzed and he had tubes in his throat and penis. ECF No. 1 at 8. Later, he was discharged and returned

to the jail and housed in the medical unit where he endured severe pain. *Id.* Plaintiff states that it took several weeks to heal and he suffers from flashbacks, PTSD, depression, and anxiety. *Id.* Plaintiff seeks monetary damages and an order requiring the dismissal of Officers Daramy, Powell, and Ndoh from their positions at MCCF. *Id.* at 5.

## II.   Defendants' Response

The MCCF Handbook requires that inmates submit an inmate grievance form within 30 days of the relevant problem. Brandon Ward Decl., ECF No. 8-2 at ¶ 4. A grievance is marked received when MCCF personnel sign and return a carbon copy of the grievance to the complaining inmate. *Id.* In Step One of the inmate grievance procedure, the receiving correctional staff reviews the grievance and responds with an answer, forwards the grievance to the appropriate section or person, or notes that the issue is "non-grievable." ECF No. 8-3 at 7. Inmates must then accept or reject the action taken. *Id.*

If the grievance moves to Step Two, the appropriate area or personnel to which the grievance was referred follow the same review process as in Step One, "with the exception that they have ten (10) working days from receipt of the grievance to answer…" ECF No. 8-3 at 8. Inmates again have the option to accept or reject the actions taken at this stage. *Id.* In Step Three, the appropriate Section Head follows the same steps to attempt to resolve the grievance within the same 10-day deadline. *Id.* If the inmate rejects the action take and moves to Step Four, the Warden reviews the grievance and responds within 10 days; this is a final response at the departmental level. *Id.* However, inmates may still appeal the Warden's decision to Step Five, which requires inmates to forward a written statement to the Department Director within 10 days explaining their reason for appeal. *Id.*

Sgt. Brandon Ward attests that Plaintiff did not file any inmate grievances between April and December 2023 concerning the events alleged in the Complaint.  ECF No. 8-2 at ¶ 6.  Plaintiff attests in a declaration attached to his Opposition that he did file a grievance on April 26, 2023.  ECF No. 10-2 at ¶ 1.  He states that he requested a grievance form and the only one available was in Spanish but he filled it out anyway and returned it to an officer that same day.  ECF No. 10 at 2; ECF No. 10-2 at ¶ 2; *see also* ECF No. 10-1.  According to Plaintiff, he accepted that his grievance would be forwarded to custody and security but he did not receive any further response from correctional staff.  ECF No. 10 at 2.

### III.    Standard of Review

Although Defendants caption their Motion as only a motion to dismiss, in the body of the filing, Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. ECF No. 8.  Such motions implicate the Court's discretion under Fed. R. Civ. P. 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).  Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  *Wells-Bey v. Kopp*, No. CIV.A. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).  Despite the title of the Motion, the substantive arguments in the Motion placed Plaintiff on notice that Defendants sought summary judgment.  ECF No. 8. Both parties attached

additional exhibits to their briefing, making treatment as a summary judgment motion appropriate. ECF 8-1 through 8-4; ECF 10-1 and 10-2. Accordingly, the Court treats the Motion as one for summary judgment. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

## IV.     Analysis

### A.  Plaintiff's Motion for Court to Enter Judgment

Plaintiff's Motion for Court to Enter Judgment in Plaintiff's Favor asserts that Defendants failed to timely respond to the Complaint. ECF No. 12. This Court issued an Order on November 13, 2024, directing Defendants to respond to the Complaint; it was mailed to the County Attorney for Montgomery County that same day. ECF No. 6. Patricia Kane, Chief of the Litigation Division of the Office of the County Attorney for Montgomery County attests that the order was received on November 17, 2023. ECF No. 13-1 at ¶ 3. Accordingly, Defendants' response was due on January 16, 2024. As the Court was closed that day due to inclement weather (ECF No. 13-2), Defendants filed their response, the pending Motion, the following day on January 17, 2024. *See* Fed. R. Civ. P. 6(a)(3).  Accordingly, Defendants timely filed their response, and Plaintiff's Motion will be denied**.**

### B.  Defendants' Motion for Summary Judgment

### 1.  Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Plaintiff failed to exhaust his administrative remedies.  ECF No. 8 at 5-6.  The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all

6

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence.  It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted.  *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006).  Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).  In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust.  *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Bock*, 549 U.S. at 219; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative

remedies).  It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process" so that the agency reaches a decision on the merits.  *Chase*, 286 F. Supp. 2d at 530; s*ee also Gibbs v. Bureau of Prison Off.*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where he did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *see also Griffin v. Bryant*, 56 F.4th 328 (4th Cir. 2022) (recognizing PLRA's "strict" requirement to exhaust all available administrative remedies").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The … PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines …."  *Woodford*, 548 U.S. at 88.  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

Upon review of the record, the Court finds that there exists a genuine dispute of material fact as to whether Plaintiff exhausted his administrative remedies before filing this Complaint. While Defendants submit Sgt. Ward's declaration which attests that Plaintiff did not file any grievance in 2023 concerning the events in the Complaint, Plaintiff's declaration states that he filed a grievance which was received by MCCF correctional staff on April 26, 2023.  Plaintiff also submits what appears to be a carbon copy of a grievance which the Court acknowledges is mostly illegible except for Plaintiff's name and ID number, the date, and a check mark in a box labeled security and custody.  ECF No. 10-1.  While the Court is unable to identify the substantive contents of the grievance, Plaintiff's declaration and Sgt. Ward's declaration stand in direct conflict with one another.   Furthermore, because the grievance procedure laid out in the MCCF Inmate Handbook does not dictate what action an inmate should take if they do not receive a timely response from correctional staff, the Court cannot find that Plaintiff failed to properly exhaust his administrative remedies.   Accordingly, the Court turns to Defendants' argument that they are immune from suit.

### a.  Qualified Immunity

Defendants argue in the alternative that they are entitled to qualified immunity.  ECF No. 8 at 7-8.  "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62-63 (2018)) (cleaned up); *see also Taylor v. Riojas*, 592 U.S. 7, 8 (2020); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, 584 U.S. 1013 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237

(4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville, N. Carolina*, 789 F.3d 389, 401 (4th Cir. 2015).

In *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 395 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015), the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Defendants' qualified immunity argument is unavailing. Plaintiff has alleged facts suggesting that he suffered physical and mental injury as a result of Defendants' deliberate refusal to provide him with his lunch, which at minimum alleges a claim for relief under the Fourteenth Amendment. Defendants simply conclude that their actions were not violative of a clearly established constitutional right without any legal support. ECF No. 8 at 8. Without more, Defendants' conclusory assertion that there was no clear violation of Plaintiff's rights is insufficient, at this stage, to show they are entitled to summary judgment in their favor.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Court to Enter Judgment is denied. Defendants' Motion to Dismiss, construed as a motion for summary judgment, is denied without prejudice to Defendants filing additional dispositive motions at later stages of the proceedings. At present, Defendants shall file an answer or other dispositive motion within 30 days.

Finally, Plaintiff's Motion for Appointment of Counsel will also be denied without prejudice. ECF No. 11. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents

exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances."  *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant*, at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).  Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so.  No exceptional circumstances exist that warrant the appointment of an attorney to represent plaintiff under § 1915(e)(1).

A separate Order follows.


July 15, 2024                                           _____/s/_____
Date                                                          Stephanie A. Gallagher
                                                                  United States District Judge

11